GANS et al. v. AUCHINCLOSS et al.

(District Court, S. D. New York. November 25, 1908.)

SHIPPING (§ 171*)—DEMURRAGE—CESSER CLAUSE.

An alleged impossibility of performing the conditions of a contract does not suffice to relieve the shipowners from the fulfillment of a provision requiring the collection of demurrage or an endorsement on the bill of lading before sailing.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 171.*

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

(Syllabus by the Judge.)

Wheeler, Cortis & Haight. for libellants.

Miller, King, Lane & Trafford (Benjamin A. Morton and William S. Montgomery, of counsel), for respondents.

ADAMS, District Judge. The libel herein was filed to recover demurrage on the steamship Finland, which was furnished by the libellants to the respondents under a charter party dated June 20, 1905.

It alleges as follows:

"Second. On or about the 20th day of June, 1905, a charter party in writing was entered into between the libellants and respondents whereby the respondents agreed to load in bulk on board a steamship to be thereafter named by the libellants, a cargo of not less than 2000 tons of phosphate at Port Inglis anchorage West coast of Florida, U. S. off mouth of Withlacoochee River for transportation to Hamburg, Germany, by the libellants on the said steamship. For the transportation of said cargo respondents agreed to pay to the libellants the sum of thirteen shillings per ton delivered.

It was further agreed by the respondents in said charter party that the vessel should be loaded at Port Inglis as aforesaid 'at the average rate of 400 tons per weather working day, (Sundays and holidays excluded)' and should be discharged at Hamburg 'at the rate of 450 tons per weather working day (Sundays and holidays excluded).' Said charter party is hereby referred to and made part of this libel.

Third. Said charter party further contained the following clause: 'All liability of Charterers shall cease on completion of loading, the Captain or owners having an absolute lien on the cargo for all Freight, Dead Freight, Demurrage, &c., due to the vessel under the Charter-Party, but all Demurrage incurred at Port of Loading must be settled before sailing therefrom or endorsed on Bills of Lading, or there shall be no lien or claim for the same.'

It proved to be impossible for the libellants to communicate with the master of the steamship 'Finland,' which was the steamship tendered in the fulfillment of the charter-party, at Port Inglis, owing to the position of said steamship and the inadequacy of the facilities there, and therefore it was impossible for the libellants to fully instruct the master of said steamship regarding the endorsement of claims on the bills of lading for demurrage as provided in said charter-party. On or about the 19th day of September, 1905, lay days of the steamer having expired and the loading of said cargo not being completed, the libellants notified the respondents that the steamship was on demurrage and that libellants would hold the respondents for said demurrage, although, owing to the impossibility of communicating with the master as aforesaid, said bills of lading might not be endorsed with claims for demurrage and further notified the respondents that all rights for demurrage were reserved. The said notice was repeated on the 20th day of September, 1905, while the said steamer was still on demurrage.

The respondents accepted said notices without demur or protest. Copies thereof are annexed hereto and marked Schedules A & B.

Fourth. The respondents failed to furnish phosphate at Port Inglis at the rate of 400 tons per weather working day, Sundays and holidays excluded, and in addition to the lay days, fixed as aforesaid, occupied seven days in loading said cargo for which libellants are entitled to receive demurrage at the rate of one hundred and fifteen and $28/_{100}$ dollars ($115.28) per day, as provided by the terms of said charter-party; making in all the sum of Seven hundred and six and $09/_{100}$ Dollars ($706.09). Payment of said sum has been demanded but the respondents have refused and still refuse to pay the same or any part thereof, and said sum is still due and owing from the respondents to the libellants.

### 'Schedule A.

N. Y. Sept. 19th, 1905.

Messrs. Auchincloss Brothers, City.

Gentlemen: S/s "Finland": As charterers of this steamer, I beg to notify you that this steamer arrived at Port Inglis on the 11th inst and therefore her lay days commenced on the 13th inst. and expired today. According to wires received from Dunnellon, the steamer will not commence loading before Thursday and therefore will be considerably on demurrage. As it is impossible for me to give clear instructions to the captain, I beg to notify you that I hold you responsible for demurrage from and including to-day until steamers loading is completed and although captain may sign clean Bs/L, owing to my inability to get instructions to him, I reserve all my rights and duly protest against the steamers signing clean bills of ladings under misapprehension. There is nothing in the charter that the steamer has to load in regular turn and therefore the delay is entirely on your account.

Yours very truly,        [Sgd]  H. Vogemann
As time-chartered owner s/s "Finland."

### 'Schedule B.

N. Y. Sept. 20th, 1905.

Messrs. Auchincloss Brothers, City.

Gentlemen: Referring to my respects of yesterday, the s/s "Finland" is reported still to lay idle at Port Inglis, and I repeat that the demurrage will continue until steamer is finished with loading.

Yours very truly,        [Sgd]  H. Vogemann.' "

The respondents excepted to the libel as follows:

"First: The respondents except to the libel herein because said libel is insufficient and informal.

It appears from said libel that the claim for demurrage was not endorsed on the bills of lading before sailing, and also that such endorsement was a condition precedent to any claim for demurrage.

These respondents pray the same advantage of said insufficiency and informality as if the same were separately and formally pleaded to said libel."

There does not seem to be any doubt that under the cesser clause, above quoted, there can be no demurrage claim upon the respondents, unless it could be upon something not appearing in the original transaction, therefore the allegation of impossibility of communication with the master of the vessel is made. That, however, does not seem to be sufficient to overcome the language of the clause, which was designed to relieve the charterers from any claim not settled before sailing, unless it should be specifically endorsed upon the bill of lading. It would seem anomalous to permit the libellants to make a new contract by alleging that one of the provisions of the original contract was im-

possible of performance, and, therefore the charterers were liable, instead of the cargo, as provided by the agreement.

It is not averred that the impossibility arose from any act of the respondents or in any other manner which would amount to a legal excuse for non-performance. The mere general statement that performance was impossible is not sufficient.

Exceptions sustained and the libel will be dismissed unless properly amended within 20 days.